1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Claude M. Stern (Bar No. 96737)
2    claudestern@quinnemanuel.com
    Mark Gray (Bar No. 305251)
3    markgray@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
4  Redwood Shores, California  94065-2139
   Telephone:     (650) 801-5000
5  Facsimile:     (650) 801-5100

6  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Jocelyn W. Lee (NY Registration No. 4919783)
7    jocelynlee@quinnemanuel.com (*pro hac vice application to be filed*)
   51 Madison Avenue, 22nd Floor
8  New York, New York 10010-1603
   Telephone:     (212) 849-7000
9  Facsimile:     (212) 849-7100

10 Attorneys for Plaintiff TIBCO Software Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| TIBCO SOFTWARE INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KAAZING CORPORATION, a Delaware corporation<br><br>Defendant. | CASE NO. _____<br><br>COMPLAINT FOR:<br>1) LANHAM ACT FALSE ADVERTISING<br>2) BREACH OF CONTRACT<br>3) SPECIFIC PERFORMANCE<br>4) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING<br>5) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE<br>6) UNFAIR COMPETITION<br>7) TRADE LIBEL<br><br>**JURY TRIAL DEMANDED**<br><br>**PUBLIC REDACTED VERSION**<br><br>Trial Date:  None Set |
|---|---|

Plaintiff TIBCO Software Inc. ("TIBCO"), by and through its attorneys of record, asserts this Civil Complaint against Defendant Kaazing Corporation ("Kaazing").

## NATURE OF THE ACTION

1. This is an action for Lanham Act False Advertising, breach of contract, specific performance, breach of the covenant of good faith and fair dealing, intentional interference with prospective economic advantage, unfair competition, and trade libel arising from Defendant's failure to honor its contractual obligations to Plaintiff TIBCO and Defendant's knowing interference with TIBCO's customers.

## THE PARTIES

2. Plaintiff TIBCO is a Delaware corporation authorized to do business and doing business in California, with its principal place of business at 3303 Hillview Avenue in Palo Alto, Santa Clara County, California.

3. On information and belief, Defendant Kaazing is a Delaware corporation with its principal place of business at 6001 America Center Drive, Suite 250 in San Jose, Santa Clara County, California.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, as this matter presents a federal question arising under the Lanham Act, 15 U.S.C. §§ 1121, 1125, as well as claims of unfair competition which are substantially related to the Lanham Act.

5. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as the remaining claims asserted here form part of the same case or controversy as that arising under the Lanham Act.

6. Venue is proper in this Court. The causes of action asserted in this Complaint arise from transactions conducted in Northern California and ███████████████████████████████████████████████████████████████████████████████████████████

**FACTS**

**A.     TIBCO Software**

7.     Founded in 1997, TIBCO is a leading enterprise software company that provides numerous products to businesses for software integration, data analytics, and high-speed digital communication.  TIBCO's services help businesses obtain efficiencies by helping them move information more quickly and analyze data to gain insights into new business opportunities and trends.  TIBCO's customers include large entities such as airlines, computer companies, and over half of the top global banks.  In part because of the value of its technology and business expertise, TIBCO was acquired for $4.3 billion in late 2014.

8.     TIBCO has been recognized as a leader within the enterprise software industry.  In October 2016, the IT research and advisory firm Gartner named TIBCO as a "Leader" and "Visionary" for Full Life Cycle API Management for the third time, based on TIBCO's completeness of vision within the industry and its ability to execute on that vision.  TIBCO was also awarded the Data Impact Award for Advanced Analytics in 2014 on the strength of its analytics technology.

9.     One of TIBCO's offerings is TIBCO Web Messaging.  Launched in 2011, TIBCO Web Messaging enables real-time, two-way web communication to help businesses communicate faster with their customers.  TIBCO Web Messaging allows information to be sent automatically to a variety of client applications, such as smart phones, tablets and browsers with exceptional levels of scalability, security, and availability and allows businesses to connect with business data more efficiently and in a more cost-effective manner across the web.  TIBCO partnered with Kaazing in releasing TIBCO Web Messaging, which incorporates Kaazing technology pursuant to a contract between TIBCO and Kaazing and which is offered by Kaazing as Kaazing WebSocket Gateway.  In the release announcement, Kaazing Vice President Manuel Hoffmann expressed excitement to work with such "an industry leader in high performance messaging middleware."

**B.     Kaazing**

10.     Kaazing is a software company founded in 2007 that provides a commercial implementation of the internet "WebSocket" standard, a technology protocol that enables real-time

1  communication between computers through an internet browser. Upon information and belief, to
2  date, Kaazing has raised roughly $39 million in funding from investors.
3         11.    Upon information and belief, Kaazing's business is centered around its
4  implementation of WebSocket. One of Kaazing's products, the "Kaazing WebSocket Gateway"
5  ("KWG"), is available as an open-source "Community Edition" for free, or in an "Enterprise
6  Edition" with some additional features and support.

   **C.    Software License Agreement with Kaazing**

8         12.    On or about ▮▮▮▮▮▮, TIBCO and Kaazing entered into a Software License
9  Agreement ("SLA" or "Agreement"), attached as Exhibit A. The SLA is incorporated into this
10 Complaint by reference. TIBCO and Kaazing also entered into a series of amendments that
11 amended various sections and exhibits of the SLA, attached as Exhibit B.
12        13.    In the SLA, Kaazing grants TIBCO a ▮▮▮▮▮▮
13 ▮▮▮▮▮▮ and allows TIBCO to
14 ▮▮▮▮▮▮
15 ▮▮▮▮▮▮ SLA §
16 2(a). The SLA also requires Kaazing to ▮▮▮▮▮▮ along with
17 ▮▮▮▮▮▮
18 ▮▮▮▮▮▮ SLA §§
19 1, 5(a), *see also* SLA § 3(c) ▮▮▮▮▮▮
20 ▮▮▮▮▮▮. The SLA also requires that ▮▮▮▮▮▮
21 ▮▮▮▮▮▮
22 ▮▮▮▮▮▮
23 SLA § 2(d)(i).
24        14.    The SLA also provides for TIBCO ▮▮▮▮▮▮
25 ▮▮▮▮▮▮
26 ▮▮▮▮▮▮
27 ▮▮▮▮▮▮ SLA § 1. ▮▮▮▮▮▮
28

1
2
3  15. The SLA became effective on ██████ and ████████
4 ██ SLA § 11(a).
5  16. Kaazing and TIBCO signed Amendment Number Thirteen to the SLA, effective
6 ████████, which added a clause to the SLA that ████████████
7
8
9
10 ████████████████ SLA Amen. No. 13.

11 **D.** **Kaazing's Breaches of Contract and Attempts to Usurp TIBCO's Business**

12  17. Kaazing has a long history of breaching its business and contractual obligations to
13 TIBCO as well as interfering with TIBCO's business relationships.
14  18. For example, in August 2014, Kaazing disclosed highly confidential trade secret
15 information of a major TIBCO customer by publishing the customer's trade secrets in marketing
16 materials on Kaazing's website. This action resulted in the customer threatening to cease
17 conducting business with TIBCO.
18  19. In March 2015, Kaazing posted a video on a public website that identified several
19 of TIBCO's customers as users of the Licensed Product, without first obtaining permission from
20 TIBCO or the customers to publish such confidential information.
21  20. On or about February to March 2015, TIBCO discovered that Kaazing ██
22
23
24
25 ████████████████ SLA § 2(d)(i).
26  21. When TIBCO demanded that Kaazing ████████████
27 ████████████ Kaazing required that TIBCO first agree to new terms
28 concerning ████████████████████. When TIBCO declined

1  to re-negotiate the terms, Kaazing refused to confirm it would ███████████████ In April
2  2015, only after TIBCO's outside counsel sent a demand letter and draft complaint for specific
3  performance of Section 2(d) of the SLA did Kaazing finally ██████████████████████
4  ██████.

5    22.  In March 2016, TIBCO again discovered that Kaazing had not ██████████
6  ████████████████████████ since April 2015.  TIBCO again asked Kaazing ██████████
7  ██████████████.

8    23.  In March 2016, Kaazing attempted to insert new language into an amendment to
9  the SLA that would have ████████████████████████████████████ Kaazing tendered a
10 revised amendment to TIBCO for countersignature without telling TIBCO that Kaazing had
11 inserted the new language prior to signing the amendment.  It was only through TIBCO's careful
12 review of the amendment prior to signing that TIBCO discovered the offending language, advised
13 Kaazing that TIBCO had never agreed to such a revision, and compelled Kaazing to correct the
14 language prior to signing.

15   24.  In April 2016, TIBCO learned that Kaazing planned to send a letter to TIBCO
16 customers falsely stating that the customers could only get future releases for the Licensed Product
17 from Kaazing.  TIBCO immediately objected, noting that the statement was false and that, in any
18 event, Kaazing could not use TIBCO customer confidential information for such communications.
19 Kaazing assured TIBCO that it would not send the letter, but nevertheless published essentially the
20 same content on its website.

21   25.  On a date unknown to TIBCO, Kaazing published a page on its website
22 (https://kaazing.com/twm/) directed at "TIBCO Web Messaging Customer[s]."  On the webpage,
23 Kaazing stated that TIBCO Web Messaging would "cease to exist as a TIBCO branded product"
24 and suggested that the only way to get future updates to the software would be to sign a contract
25 with Kaazing to get them "directly from Kaazing."  TIBCO did not discover this website content
26 until November 27, 2016, and had no reason to believe prior to that date that Kaazing would
27 publish such false and defamatory matter about TIBCO.  Kaazing appears to have removed the
28 webpage from public view on November 30, 2016, but only after TIBCO incurred attorney's fees

and TIBCO's outside counsel demanded the false information to be deleted or else TIBCO would be forced to take legal action.

26. On or around November 22, 2016, Kaazing Chief Revenue Officer Simon Negus emailed a major TIBCO client ("TIBCO Client") directly and represented to the client that TIBCO "has chosen not (sic) have rights to license [the Licensed Product] from Kaazing" and that "Tibco cannot provide [the Licensed Product] at 4.5.3 as part of their Enterprise Agreements." Further, "in plain speech, if [the TIBCO Client] wants 4.5.3 (which it does) the only place it can get it is through Kaazing."

27. This statement is false: as Amendment Number 13 to the SLA states ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SLA § 1 (emphasis added). Kaazing is contractually obligated to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ until the Agreement is terminated.

28. On November 23, 2016, Mr. Negus again emailed the TIBCO Client and stated that TIBCO did not have the right to contract with the client for a perpetual license. He also went on to claim that, starting December 1, 2016, the client's use of the software would be "unlicensed and unsupported."

29. Again, these statements by Kaazing are false. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Kaazing's representations to the contrary are intended solely to convince TIBCO's End Users to contract with Kaazing, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

30. Further, Kaazing has failed to deliver to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" despite its contractual obligation ▮▮▮. SLA § 3(c). On November 30, 2016—again only after TIBCO's outside counsel wrote to Kaazing and stated that TIBCO would take legal action—Kaazing finally delivered what it

1  claimed were the latest versions of the Licensed Product.  On information and belief, Kaazing's
2  delivery occurred well after they had been made available by Kaazing to Kaazing's customers.
3         31.     Through its repeated actions of denying TIBCO the contractual rights to which
4  TIBCO is contractually entitled and unlawfully attempting to interfere with or steal, and/or
5  actually interfering with or stealing economic and contractual customer relationships from TIBCO
6  ███████████████████████████████████ Kaazing has effectively
7  ████████████████████████████████████████████████████████,
8  and is unfairly competing against TIBCO with respect to TIBCO's actual and prospective
9  customers.
10        32.     Kaazing's actions and conduct as alleged herein have caused TIBCO irreparable
11 injury and harm for which TIBCO does not have an adequate remedy at law.
12        33.     In addition, upon information and belief, TIBCO estimates that Kaazing's conduct
13 and actions as alleged herein have caused TIBCO damage and injury in an amount of no less than
14 $10 million, including but not limited to Kaazing's ill-gotten gains and financial benefit from its
15 unlawful conduct.

### FIRST CLAIM FOR RELIEF

### (False Advertising under Lanham Act Section 43(a))

18        34.     Plaintiff realleges and incorporates herein by reference each and every allegation
19 contained in paragraphs 1 through 33 above, as though set forth at length.
20        35.     Kaazing's statements regarding TIBCO's ability to license and distribute TIBCO
21 Web Messaging were knowingly false.  For example, Kaazing knows that its statement that
22 TIBCO's Web Messaging was unlicensed and unsupported is false, or Kaazing was in reckless
23 disregard for the falsity of its statement.
24        36.     These false statements had a tendency to deceive a substantial segment of their
25 audience.  Because Kaazing addressed the page "TIBCO Web Messaging" to every "TIBCO Web
26 Messaging Customer," TIBCO customers were likely to find this page and believe its statements
27 about the status of TIBCO Web Messaging because the message came from TIBCO's business
28 partner.

37. Kaazing's statements were materially deceptive, and would likely influence the purchasing decision of TIBCO End Users. TIBCO End Users are unlikely to want to contract for unlicensed or unsupported software.

38. Because Kaazing placed its statements on the public internet, accessible to computers in every state and every country, Kaazing has caused its deceptive statements to enter interstate commerce.

39. TIBCO has been injured as a result of Kaazing's false statements, which may have caused at least one TIBCO customer to decline to enter into a transaction with TIBCO. Other TIBCO customers were likely similarly deterred by these false statements. Kaazing's false statements lessened goodwill associated with TIBCO and its products by suggesting TIBCO sold unlicensed and unsupported products to its customers.

40. As a result of Kaazing's false statements, TIBCO has suffered damages in an amount to be proven at trial but, on information and belief, estimated to be at least $10 million, including but not limited to Kaazing's ill-gotten gains and financial benefit from its unlawful conduct. TIBCO is also entitled under the Lanham Act to the costs of this action, and because this case is exceptional, reasonable attorney's fees.

## SECOND CLAIM FOR RELIEF

**(Breach of Contract)**

41. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 40, above, as though set forth at length.

42. The SLA is a valid and enforceable contract that imposes upon Kaazing contractual obligations. As a party to the SLA, Kaazing is obligated to abide by its terms, including the requirement ███████████████████████████████████████.

43. TIBCO has performed all of its obligations under the SLA by, among other things, ██████████████████████████████████████ as specified in the contract.

44. Kaazing has not performed in accordance with its obligations under the SLA. For example, Kaazing has repeatedly refused ███████████████████████████████████ ███████████████████████████████████████████████ Kaazing has breached

-8-  Case No. _____
TIBCO COMPLAINT AGAINST KAAZING

1 the contract's provisions requiring ████████████████████████████████████
2 ████████████████████████████████████████████████████████████████████████
3 ████████████████████████████████████████████████████████████

4  45. Further, Kaazing's statements to TIBCO customers that TIBCO Web Messaging is
5 "unlicensed and unsupported" ███████████████████████████████████████
6 ████████████████████████, which will only stop if enjoined by this Court. ███████
7 ████████████████████████████████████████████████████████████████████████

8  46. Because of Kaazing's breach of its obligations under the SLA, TIBCO has been
9 deprived of benefits that would have accrued to it under the SLA. TIBCO has also incurred
10 substantial costs in customer goodwill due to Kaazing's delay. This has caused and continues to
11 cause substantial economic harm to TIBCO.

12  47. On information and belief, TIBCO has been damaged as a result of Defendant's
13 conduct in an amount to be proved at trial, but no less than $10 million, including but not limited
14 to Kaazing's ill-gotten gains and financial benefit from its unlawful conduct.

15  48. Because Kaazing's breach involves its failure ███████████████████████
16 ████████████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████████████
19 ███████████████████████████████████████████.

20 **THIRD CLAIM FOR RELIEF**

21 **(Specific Performance)**

22  49. TIBCO incorporates herein by reference each and every allegation contained in
23 paragraphs 1 through 48, above, as though fully set forth at length.

24  50. As set forth above, TIBCO and Kaazing entered into a valid and enforceable
25 agreement █████████████████████████████████████████ and thus have a contractual
26 relationship.

51. TIBCO has fully honored and performed all conditions, covenants and promises that it is required to perform under the SLA. Kaazing's obligations to perform are triggered under the contract.

52. Despite its obligations under Section 2(d) of the SLA, Kaazing has repeatedly failed, and upon information and belief has continued to fail █████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████ Not only has Kaazing failed to adhere to Section 2(d) in the past, but it has also threatened to breach Section 2(d) as a way to pressure TIBCO into acting according to Kaazing's wishes. Kaazing has given no meaningful assurances that it will completely adhere to Section 2(d) of the SLA in the future.

53. Kaazing's failure to honor its contractual obligation under Section 2(d) constitutes a harm for which TIBCO has no adequate legal remedy. The contract ████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████ For this reason, Kaazing's repeated failure to perform its obligations under Section 2(d) cannot be adequately compensated by money damages.

54. Kaazing's breach of contract, and its ongoing refusal to meaningfully and completely comply with its obligations will cause an irreparable harm if not addressed by a Court order of specific performance and other forms of equitable relief. Moreover, an order of specific performance will impose no harm on Kaazing as TIBCO seeks only to vindicate its rights under the SLA.

55. Because Kaazing's breach involves its failure ████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████

## FOURTH CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

56. TIBCO incorporates herein by reference each and every allegation contained in paragraphs 1 through 55, above, as though fully set forth at length.

57. As set forth above, TIBCO and Kaazing entered into a valid and enforceable agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and thus have a contractual relationship.

58. Under California law, every contract, including the SLA, contains an implied duty of good faith and fair dealing which requires among other things, that Kaazing refrain from any acts that would deprive TIBCO of the benefits of the SLA.

59. One of the benefits of the SLA is that it enables TIBCO ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

60. TIBCO fully honored the implied covenant and performed its obligations under the SLA.

61. However, Kaazing has breached the implied covenant and deprived TIBCO of the benefit of the SLA by, *inter alia*, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This conduct has frustrated TIBCO's ability to enjoy the benefits of its valid agreements with Kaazing and caused harm to TIBCO's ability to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ due to Kaazing's false statements.

62. As a direct and proximate cause of Kaazing's conduct, TIBCO has been damaged in an amount to be proved at trial, as well as punitive damages and such other damages as determined by the Court.

## FIFTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage)

63. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 62 above, as though set forth at length.

64. TIBCO has an economic relationship with the TIBCO Client, due to the parties' prior contract ▇▇▇. At the time of Kaazing's actions, TIBCO and the TIBCO Client were in discussions to extend the terms of their contract with respect to ▇▇▇ and there was a probability of future economic benefit to TIBCO.

65. Defendant Kaazing knew of TIBCO's relationship with the TIBCO Client, ▇▇▇ and Kaazing's execution of Amendment Number Two to the SLA, ▇▇▇ Kaazing's false statement to the TIBCO Client ▇▇▇ was an intentional act designed to disrupt the TIBCO Client's relationship with TIBCO. Kaazing knows this statement is false and that the SLA ▇▇▇

66. Kaazing's false statements were made with the intent to disrupt TIBCO's relationship with the TIBCO Client and deprive TIBCO of economic benefits from that ongoing business relationship.

67. Kaazing's false statements were independently wrongful because they violate state and federal law, including but not limited to California contract law, the implied covenant of good faith and fair dealing, California's Unfair Competition Law, and trade libel law.

68. As the direct and proximate result of Kaazing's false statements, TIBCO's relationship with the TIBCO Client has been disrupted, as the TIBCO Client wrongly believed that TIBCO did not have the legal right ▇▇▇

69. TIBCO has been damaged by Kaazing's intentional interference with the business relationship between TIBCO and the TIBCO Client in an amount to be determined at trial, but which upon information and belief is not less than $10 million, including but not limited to Kaazing's ill-gotten gains and financial benefit from its unlawful conduct.

### SIXTH CLAIM FOR RELIEF

**(Violation of Business and Professions Code Section 17200)**

70. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 69 above, as though set forth at length.

71. California's Business and Professions Code Section 17200 prohibits unlawful, unfair, and fraudulent business practices.

72. TIBCO ▮▮▮▮▮▮▮▮▮▮ to Kaazing in the expectation that Kaazing would ▮▮▮▮▮▮▮▮▮▮, and therefore has standing to seek relief under Section 17200.

73. Kaazing's actions are unlawful. For example, Kaazing's failure to ▮▮▮▮▮▮▮▮▮▮ constitutes an unlawful breach of its contractual obligations. Kaazing further committed unlawful business practices by intentionally interfering with the contracts of TIBCO, intentionally interfering in TIBCO's business relationships, and breaching Kaazing's duty to TIBCO of good faith and fair dealing. Kaazing's unlawful acts have enabled it to compete unfairly with TIBCO, causing economic injury.

74. Kaazing's actions are fraudulent: by way of example, Kaazing's publishing of an open web page asserting that TIBCO no longer has a legal right to distribute the Licensed Product. Such statements and actions are likely to have mislead and deceived California consumers and TIBCO customers.

75. Kaazing's actions violate Chapter 1 of Part 3 of Division 7 of the Business and Professions Code. As an example, Section 17500 prohibits "any . . . firm, corporation or association . . . with intent directly or indirectly . . . to perform services" from disseminating statements that are "untrue or misleading" and that the entity knows to be untrue or misleading.

Kaazing's actions were knowingly misleading and made with the intent for Kaazing to provide goods and services to TIBCO's customers.

76. Kaazing's actions further violate Section 17505 of the Business and Professions Code, which provides that "No person shall state . . . that he owns or controls a . . . source of supply of goods, when such is not the fact," and prohibits an entity from in "any other manner" misrepresenting the "character, extent, volume, or type of his business." Kaazing's acts and false statements misrepresented Kaazing as the sole provider of technology incorporating Kaazing's Licensed Product, and misrepresented the character of Kaazing's business.

77. As a result of Kaazing's unlawful, unfair, and fraudulent business practices, TIBCO has suffered injury in fact and has lost money. Kaazing has unlawfully gained benefits subject to disgorgement, in an amount to be proven at trial but upon information and belief is to be at least $10 million, including but not limited to Kaazing's ill-gotten gains and financial benefit from its unlawful conduct.

## SEVENTH CLAIM FOR RELIEF

### (Trade Libel)

78. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 77 above, as though set forth at length.

79. California trade libel law prevents businesses from intentionally and falsely disparaging the goods and services of another company.

80. By falsely stating to TIBCO customers that TIBCO does not have the rights to distribute the most recent version of the Licensed Product, Kaazing has disparaged the quality of TIBCO's goods and services.

81. Kaazing's false statements were intentional: at all times Kaazing knew or should have known that the SLA ██████████████████████ and that Kaazing was contractually obligated to ██████████████████████████████████████. Kaazing knew its statement was false or it made its statements with reckless disregard for the truth of those statements.

82. TIBCO has suffered injury in fact and has lost money as a result of Kaazing's knowingly false statements. TIBCO's damages from Kaazing's false statements are in an amount to be determined at trial, but upon information and belief are no less than $10 million, including but not limited to Kaazing's ill-gotten gains and financial benefit from its unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, TIBCO prays for relief as follows:

A. For all damages to TIBCO arising from Kaazing's conduct, in an amount of no less than $10 million, including but not limited to Kaazing's ill-gotten gains and financial benefit from its unlawful conduct;

B. For a declaration of this Court that Kaazing's conduct is unlawful;

C. For a temporary restraining order and preliminary and permanent injunctions ordering Kaazing to ███████████████████████████████████████ ███████████████████████████████████

D. For a temporary restraining order and preliminary and permanent injunctions ordering Kaazing to ███████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████

E. For a temporary restraining order and preliminary and permanent injunctions preventing Kaazing from further interfering with TIBCO's prospective economic advantage;

F. For an order for specific performance of Kaazing's obligations under the SLA;

G. For an order requiring Kaazing to pay punitive damages in an amount to be determined at trial;

H. For an order requiring Kaazing to disgorge all wrongfully obtained profits as restitution for its unlawful actions;

I. For an award of TIBCO's costs and reasonable attorney's fees incurred in connection with this action as well as TIBCO's previous demand to Kaazing to take

1  down its webpage and ████████████████████████████████████;

2  and

3  J.   For such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

TIBCO hereby demands a trial by jury on all issues so triable.

DATED:  December 2, 2016                    Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Claude M. Stern*
   Claude M. Stern
   *Attorney for Plaintiff TIBCO Software Inc.*